STATE of Missouri, Plaintiff–Respondent,

v.

Kendal Lane STEWART, a/k/a Kendall L. Stewart, Defendant–Appellant.

No. SD 29392.

Missouri Court of Appeals, Southern District, Division Two.

Oct. 15, 2009.

Stuart P. Huffman, Whiteaker & Wilson, P.C., Springfield, MO, for Appellant.

Chris Koster, Attorney General, and Jamie Pamela Rasmussen, Assistant Attorney General, Jefferson City, MO, for Respondent.

GARY W. LYNCH, Presiding Judge.

Kendal Lane Stewart ("Defendant") appeals his felony conviction for resisting arrest. *See* § 575.150.[1] Specifically, Defendant brings six points on appeal, alleging that the trial court erred: (1) in overruling Defendant's motion for judgment of acquittal at the close of the State's evidence because there was insufficient evidence presented showing Defendant knew he was being arrested; (2) in failing to quash the venire panel because one member of the panel was a uniformed police officer and said that she had previous knowledge of Defendant and could not be fair and impartial; (3) in submitting to the jury instruction number five, based upon MAI–CR3d 329.60, because the State failed to show a felony had been committed; (4) in not submitting to the jury the offense of third-degree assault of a law enforcement officer because it was a lesser-included offense; (5) in overruling Defendant's objection to testimony that Defendant was being arrested for aggravated stalking because such testimony amounted to impermissible prior bad acts evidence; and (6) in denying Defendant's motion for mistrial because testimony referencing "numerous calls" regarding Defendant "and a victim" violated Defendant's right of confrontation. Finding no merit in Defendant's points, we affirm.

### Factual and Procedural Background

We view the evidence presented at trial, as well as all reasonable inferences that can be drawn therefrom, in the light most favorable to the verdict and reject all contrary evidence and inferences. *State v. Newberry,* 157 S.W.3d 387, 390 (Mo.App. 2005). Viewed in that light, the following was adduced at trial.

On October 19, 2006, the Springfield Police Department received information that Defendant was located inside a "fifth wheel" trailer at 2918 West Hovey, in Greene County, Missouri. The police had been looking for Defendant as a result of receiving several calls to the department regarding Defendant and a particular victim. Additionally, there were two outstanding warrants for Defendant's arrest, one of which was for aggravated stalking, a felony. Officer Michael Stroud was dispatched to the location on West Hovey and contacted three or four other officers to accompany him to that location. Officer Stroud gave each officer an assigned location on the property and then approached the trailer with Officer Curtis Ringgold. All of the officers were in uniform. Officers Stroud and Ringgold could hear voices through an open window, and Officer Ringgold spoke through that window to the individuals inside, announcing his presence as a police officer and asking those inside to exit the trailer. At that point, one of the individuals—not Defendant—came to the door and identified himself, and he was escorted by another offi-

---

1. All statutory references are to RSMo Cum. Supp.2005, unless otherwise indicated.

cer to the opposite end of the trailer. Through the open door, Officer Stroud could see another individual curled up into a ball underneath a table, with his hands in front of his face. Officer Stroud repeatedly asked the individual to show his face and hands; at some point, the individual moved his hands enough so that Officer Stroud was able to identify the individual as Defendant.

When Defendant refused to comply with Officer Stroud's orders, Officer Stroud directed Officer Ringgold to lean into the trailer and grab Defendant's feet and pull him out from underneath the table. Officer Ringgold continued to order Defendant to show his hands while he moved toward Defendant, and when Officer Ringgold reached for Defendant's feet, Defendant began kicking and hid his hands underneath his body. Officer Stroud then approached the table and attempted to apply "distractionary techniques" to Defendant's legs in an effort to assist Officer Ringgold; this entailed Officer Stroud applying pressure with his foot to the major muscle groups in Defendant's legs. At some point during the altercation, Defendant kicked the table, and it fell on him. Although Defendant initially continued kicking, he eventually stopped after several minutes, and Officers Stroud and Ringgold were able to place Defendant in handcuffs. Throughout the entire ordeal, Officer Ringgold continued to order Defendant to show his hands and to stop resisting the officers, but it was only after Defendant was in handcuffs and the officers stood him up that he completely stopped pulling away from and fighting with them.

Once Defendant was restrained by the handcuffs, he asked Officer Stroud why he was being arrested; Officer Stroud replied that Defendant was wanted on multiple felony warrants, specifically referencing the aggravated stalking warrant, in addition to the new resisting-arrest charge.

Defendant was charged by felony information with felony resisting arrest, pursuant to § 575.150. He was further charged as, and found to be by the trial court prior to trial, a prior and persistent offender, pursuant to §§ 558.016 and 557.036.[2] After being found guilty as charged by a jury, Defendant argued his motion for new trial immediately prior to sentencing, and the motion was denied. The trial court then sentenced Defendant to seven years' incarceration, the maximum possible sentence. This appeal timely followed.

Additional facts necessary to the resolution of Defendant's individual points are set out *infra.*

## *Discussion*

Defendant presents six points for our review. We address them in chronological order for ease of understanding.

### *I. Venire Panel*

In his second point, Defendant contends that the trial court erred in denying his motion to quash the venire panel following venireperson number seventeen's statement that: "[A]s a police officer, previous knowledge of the Defendant, I don't think I could be fair and impartial." Defendant claims that these statements tainted the entire panel by implying prior run-ins with the law and, thus, prior bad acts on the part of Defendant, depriving Defendant of a fair trial. We disagree.

#### *A. Standard of Review*

■ "A trial court has broad discretion in deciding whether a jury panel should be dismissed and the court's ruling will not be disturbed unless there is a clear abuse of

**2.** All references to § 557.036 are to RSMo    Cum.Supp.2003.

discretion." *State v. Sprinkle,* 122 S.W.3d 652, 658 (Mo.App.2003) (citing *State v. Thompson,* 985 S.W.2d 779, 789 (Mo. banc 1999)). This is because the trial court is in the best position to determine the effect of an allegedly improper statement on the members of the venire. *State v. Scott,* 359 Mo. 631, 223 S.W.2d 453, 455 (1949). "A trial court abuses its discretion when its ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *State v. Johnson,* 207 S.W.3d 24, 40 (Mo. banc 2006) (citing *State v. Brown,* 939 S.W.2d 882, 883 (Mo. banc 1997)). We presume that the trial court's ruling was correct, and it is the defendant's burden to demonstrate otherwise. *State v. Franklin,* 144 S.W.3d 355, 361 (Mo.App.2004).

### B. Analysis

■ During voir dire, the State asked the panel if any venireperson, member of their families, or close friend had ever "served as law enforcement." Several potential jurors responded to the question. One venireperson in particular, venireperson seventeen, was dressed in a police uniform and responded, "[A]s a police officer, previous knowledge of the Defendant, I don't think I could be fair and impartial." Defendant's attorney immediately moved to quash the entire venire panel, a request which was denied. The trial court instructed the State to continue its line of questioning but not to further question venireperson seventeen. When the panel had finished with that particular question, the trial court took a break and had the bailiff ask venireperson seventeen not to return. During the break, the trial court gave Defendant the option of the court saying nothing regarding venireperson seventeen's absence, or explaining that venireperson seventeen had been excused because she was a coworker of the State's

two witnesses, Officers Stroud and Ringgold. Defendant chose the latter and, upon reconvening the venire panel, the trial court informed them accordingly. Defendant now claims that such action was not enough, and that the entire panel should have been discharged.

Initially, Defendant assumes that venireperson seventeen's statements conveyed a negative connotation toward Defendant, but he fails to point to any support for such assumption in the record. Venireperson seventeen's remark did not specify the nature of her previous contact with Defendant; she merely implied that the contact occurred through her position as a police officer. The comment insinuated nothing about the nature of the contact. *See State v. Childs,* 652 S.W.2d 161, 162 (Mo.App. 1983) ("In the course of performing his duties, a police officer encounters many people, including victims of crime, witnesses to crime, and residents or owners of businesses in an area he patrols, whom he has never arrested. Mere familiarity with a police officer does not constitute evidence that one has been arrested or convicted of another crime.").

■ Nevertheless, indulging the Defendant's assumption, not every venireperson response unfavorable to the defendant necessitates the discharge of the entire venire panel, even though heard by the panel at large. *State v. Wise,* 745 S.W.2d 776, 778 (Mo.App.1988). "Usually, disqualification of an individual juror for bias or expression of an opinion is insufficient for challenging the entire array." *State v. Evans,* 802 S.W.2d 507, 514 (Mo. banc 1991). Ordinarily, when a venireperson's remark demonstrates bias against the defendant, the removal of that particular venireperson and an instruction from the judge are enough to remedy the situation. *Id.* This has been found even when the

allegedly biased remark insinuates a defendant's prior bad acts. *See State v. Releford,* 750 S.W.2d 539 (Mo.App.1988) (venireperson stated that he was a jail chaplain and knew the defendant through his position); *State v. Eidson,* 701 S.W.2d 549 (Mo.App.1985) (venireperson made statements regarding the defendant's reputation in the area). In order to justify striking the entire venire panel for the statements of one potential juror, a defendant must demonstrate that the venireperson's comments were so prejudicial and inflammatory that they deprived the defendant of a fair trial. *State v. Millsap,* 244 S.W.3d 786, 790 (Mo.App.2008) (citing *State v. Strong,* 142 S.W.3d 702, 723 (Mo. banc 2004)).

Defendant fails to overcome this burden. He offers only conclusory restatements of his position without expounding upon concrete, factual details in the context of the record of this particular case supporting his claim, e.g., "It was clear that [venireperson seventeen's] statements, along with her status as a police officer, tainted the rest of the panel, leading one to believe that [Defendant] had a past criminal history." Defendant points to nothing in the record in support of this allegation, nor does he point to any relevant case law. Moreover, Defendant states, "Trial counsel had previously asked that [venireperson seventeen] be excused due to concerns as to her status, prior to questioning[,]" but he provides no citation to the record as to where this request occurred, and this Court is unable to find any such request in the record.

Defendant seems to argue that simply because he "appropriately approached the bench and requested that the panel be quashed and a new panel be brought in[,]" he was entitled to a ruling in his favor. The case law, however, dictates otherwise. In *State v. Davis,* 806 S.W.2d 441 (Mo.

App.1991), in response to being asked if any member of the venire was familiar with the defendant, a venireperson responded, "I'm not sure. I may know this man because I work downtown at the City Jail." *Id.* at 443. That particular juror was removed from the panel, but the court denied the defendant's request to quash the panel. *Id.* The Eastern District of this Court affirmed the defendant's convictions, finding that, even if the remarks had definitely implicated the defendant in that case, they were sufficiently vague, and the remainder of the panel would not necessarily infer that the defendant had been incarcerated before. *Id.*

Such is the case here. Venireperson seventeen simply articulated that she felt unable to fulfill her duty to be a fair and impartial juror because she was familiar with Defendant. Moreover, venireperson seventeen was excused, the trial court went so far as to explain her absence from the venire panel to the remaining members in a manner that deflected from her familiarity with Defendant by emphasizing her status as a coworker of two of the State's witnesses as the reason she could not serve on the jury. Such an action, though arguably unnecessary in light of case law, certainly eliminated entirely or greatly minimized any potential negative impression venireperson seventeen might have made on the remaining members of the venire related to her familiarity with Defendant. The trial court did not abuse its discretion in denying Defendant's motion to quash the venire panel. Defendant's second point is denied.

## II. Officer Stroud's Testimony

Defendant's fifth and sixth points relied on contest Officer Stroud's testimony in two respects. Point five alleges trial court error "in overruling [Defendant's] objection to Officer Stroud testifying that [De-

fendant] was arrested for aggravated stalking" because such testimony constituted evidence of an inadmissible prior bad act. Point six alleges trial court error "in denying [Defendant's] motion for mistrial when Officer Stroud testified that he arrested [Defendant] due to numerous calls with the [Defendant] and a victim, which violated [Defendant's] motion in limine and right of confrontation[3] by allowing testimony of [Defendant's] prior bad acts." We find that Defendant failed to preserve point five for appellate review and that point six has no merit.

### A.  Standard of Review

This Court reviews allegations of error regarding the admission of evidence for an abuse of the trial court's discretion. *State v. Cummings*, 134 S.W.3d 94, 102 (Mo.App. 2004). The trial court's discretion in this area is broad, *State v. Churchill*, 98 S.W.3d 536, 538 (Mo. banc 2003), and is abused "only when it is clearly against the logic of the circumstances then before the trial court and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful deliberate consideration." *Cummings*, 134 S.W.3d at 102. We further review such allegations for prejudice, not mere error. *State v. Bisher*, 255 S.W.3d 29, 33 (Mo.App.2008). We will reverse the decision of the trial court only where the established error more likely than not affected the outcome of the case. *State v. Walkup*, 220 S.W.3d 748, 757 (Mo. banc 2007).

The decision to grant or deny a motion for mistrial is also within the discretion of the trial court. *State v. Davis*, 122 S.W.3d 690, 692 (Mo.App.2003). "Mistrial is a drastic remedy to be used only in the most extraordinary circumstances when there is a grievous error which cannot otherwise be remedied," *id.* (internal quotation omitted), and the trial court is in the best position to determine any prejudicial effect a challenged comment might have, as well as which remedial measures, if any, are needed. *Id.* at 692–93.

### B.  Analysis

During Officer Stroud's testimony, Defendant objected to the officer's mention of the outstanding aggravated stalking warrant for Defendant's arrest without the admission of the actual physical warrant, an alleged violation of the best evidence rule. On appeal, Defendant now asserts in his fifth point that such testimony constituted evidence of an inadmissible prior bad act; a claim not presented to the trial court in his objection. "Any grounds that are not raised in the objection are considered waived, and a party is prevented from raising such grounds for the first time on appeal." *State v. Overton*, 261 S.W.3d 654, 667 (Mo.App.2008). Point five is denied.

In point six, Defendant challenges the trial court's denial of his motion for mistrial following Officer Stroud's testimony that "we had had several calls dealing with the Defendant and a victim," which Defendant contended at trial and now on

---

**3.** In the argument portion of his brief under point six, Defendant argues a violation of his right to confrontation in the context of Officer Stroud's testimony about the outstanding warrant for Defendant's arrest for aggravated stalking, the alleged error challenged in point five. Nowhere in his brief does Defendant proffer any argument that Officer Stroud's statement as challenged in his sixth point

violates his right to confrontation. The failure to address this issue in the argument portion of his brief is deemed an abandonment of the issue by Defendant. *State v. Rife*, 619 S.W.2d 900, 902 (Mo.App.1981); *State v. Friend*, 607 S.W.2d 902, 904 n. 1 (Mo.App. 1980); *State v. Brown*, 604 S.W.2d 10, 15 (Mo.App.1980).

appeal constitutes evidence of his prior bad acts. The trial court denied his motion for a mistrial, and Defendant, even though explicitly given the opportunity to do so by the trial court, requested no other relief.

■ The State argues that the statement is admissible, because it puts into context Stroud's actions in bringing extensive backup, placing them strategically around the trailer, and using physical manipulation to extract Defendant from the trailer, and it explains why such drastic measures were used. We need not determine whether the statement was admissible for that purpose because, even assuming without deciding that it was inadmissible prior-bad-act evidence, as Defendant contends, Defendant has failed to demonstrate how it prejudiced him to the extent that a mistrial was required. "Ordinarily a trial court cures errors in matters presented to the jury by instructing the jury to disregard the offending matter." *State v. Bell,* 66 S.W.3d 157, 167 (Mo.App.2001) (quoting *State v. White,* 856 S.W.2d 917, 920 (Mo.App.1993)).

Here, Defendant fails to explain or demonstrate how Stroud's statements prejudiced him in any way, much less in such a manner that a mistrial was the only appropriate remedy. Defendant in his brief merely repeats the blanket allegations that "[the statements] unduly prejudiced [Defendant] and [were] more prejudice [sic] than probative," without any further analysis or explanation. Without a clear demonstration based upon specific references to the record related explicitly and coherently to relevant legal authority supporting that Defendant was actually prejudiced by Stroud's statement, this Court will not, and indeed cannot, find the trial court's denial of mistrial to have been in error. *State v. Woods,* 705 S.W.2d 76, 78 (Mo.App.1985) ("Relief cannot be granted where defendant has failed to demonstrate how he was prejudiced by the court's action."). Point six is denied.

### III. Motion for Judgment of Acquittal

In his first point, Defendant argues that the trial court erred when it denied his motion for judgment of acquittal at the close of the State's case. In particular, Defendant asserts that there was insufficient evidence to prove that Defendant knew or should have known that he was being arrested. This Court disagrees.

#### A. Standard of Review

"When a criminal defendant challenges the sufficiency of the evidence to support a conviction, this Court's review is limited to determining whether sufficient evidence was admitted at trial from which a reasonable trier of fact could have found each element of the offense to have been established beyond a reasonable doubt." *State v. Reed,* 181 S.W.3d 567, 569 (Mo. banc 2006). This standard applies when we review motions for acquittal, as well. *State v. Botts,* 151 S.W.3d 372, 375 (Mo.App. 2004). We view the evidence and all reasonable inferences in the light most favorable to the verdict. *State v. Hopson,* 168 S.W.3d 557, 559 (Mo.App.2005). We disregard all contrary evidence and inferences. *State v. Nichols,* 200 S.W.3d 115, 121 (Mo. App.2006). In examining the evidence, we do not "supply missing evidence, or give the State the benefit of unreasonable, speculative[,] or forced inferences." *State v. Whalen,* 49 S.W.3d 181, 184 (Mo. banc 2001) (quoting *Bauby v. Lake,* 995 S.W.2d 10, 13 n. 1 (Mo.App.1999)). We likewise do not reweigh the evidence, but will defer to the trial court's determinations of credibility. *State v. Burse,* 231 S.W.3d 247, 251 (Mo.App.2007).

#### B. Analysis

■ At the close of the State's evidence, Defendant moved for a judgment of

acquittal, arguing that the State failed to prove the element of the offense [4] that, at the time Defendant was being arrested, he knew or should have known he was, in fact, being arrested. The trial court overruled Defendant's motion. Defendant did not present any evidence.

"It is not necessary for the police to tell a suspect he is under arrest where the circumstances show that an officer is attempting an arrest." *Nichols*, 200 S.W.3d at 121 (citing *State v. Chamberlin*, 872 S.W.2d 615, 619 (Mo.App.1994)). Proper circumstantial evidence is sufficient to support a conviction of resisting arrest. *State v. Gibbs*, 224 S.W.3d 126, 137 (Mo. App.2007). Here, the officers identified themselves as police officers and ordered the occupants of the trailer to exit with their hands up. When Defendant did not comply with that order, Stroud looked inside the trailer and, seeing Defendant hiding underneath the table concealing his face, repeatedly ordered Defendant to move his hands and show his face so that Stroud could identify Defendant. Defendant's noncompliance with this order prompted Ringgold to enter the trailer and try to forcibly remove Defendant from underneath the table. The officers repeatedly demanded that Defendant show his hands and stop resisting, while Defendant continued to kick at the officers and avoid their attempts to restrain him. Similar actions have been found sufficient to support a resisting arrest conviction.

In *Nichols*, 200 S.W.3d 115, law enforcement officers initially announced that they were executing a search warrant, not exacting an arrest. *Id.* at 121. During the course of the interaction, however, Nichols was repeatedly ordered "to show his hands, lay [sic] down, and put his hands behind his back." *Id.* The *Nichols* court found the instructions to be a sufficient indication of the officers' intent to arrest Nichols and that Nichols should have known he was being arrested at the time he resisted the officers' actions. *Id.*

In the case at bar, the officers' instructions to Defendant were likewise specific, and indicated their intent to arrest Defendant. Defendant's actions in covering his face with his hands and refusing to uncover his face when repeatedly directed by the officer to do so support a reasonable inference by the jury that Defendant knew that when the officer identified him, he would be arrested. Moreover, once Defendant was restrained and had ceased struggling against Stroud and Ringgold, he asked the officers the reason for his arrest. The jury could have also reasonably inferred from this question Defendant's knowledge that the preceding actions by the officers were an attempt to arrest him. While Defendant argues a contrary inference as to the meaning of his statement, our standard of review requires that we disregard contrary inferences, *Nichols*, 200 S.W.3d at 121, and accept all reasonable inferences in favor of the verdict. *Hopson*, 168 S.W.3d at 559. Applying that standard of review, Defendant's first point is denied.

## IV. Submission of Jury Instruction No. 5

Defendant's third point relied on reads:

Defendant used violence or physical force to resist the arrest for the purpose of preventing it. § 575.150. Defendant only challenges the sufficiency of the evidence supporting the third element.

---

4. To convict Defendant of felony resisting arrest, the State had to prove that: (1) a law enforcement officer was making the arrest; (2) the arrest was for a felony offense; (3) Defendant knew or reasonably should have known that he was being arrested; and (4)

THE TRIAL COURT ERRED IN GIVING INSTRUCTION NO. 5, MAI-CR3d 329.60 AS THE STATE FAILED TO SHOW A FELONY HAD BEEN COMMITTED PURSUANT TO MAI-CR3d 329.60, THEREFORE, APPELLANT'S CONVICTION SHOULD BE OVERTURNED AND THE MATTER REMANDED TO THE TRIAL COURT FOR SENTENCING ON A MISDEMEANOR.

Rule 84.04 [5] requires that "[i]f a point relates to the giving, refusal or modification of an instruction, such instruction shall be set forth in full in the argument portion of the brief." Rule 84.04(e). Furthermore, the rule dictates that "[a] party's brief shall contain or be accompanied by an appendix containing ... [t]he complete text of any instruction to which a point relied on relates." Rule 84.04(h)(3). A party is thus given the option of including the text of the challenged instruction in either the party's brief or its appendix. Defendant failed to include the text of MAI–CR3d 329.60 in either his brief or his appendix. Failure to comply with Rule 84.04 preserves nothing for our review. *State v. Wilkins,* 229 S.W.3d 204, 210 (Mo. App.2007); *State v. Thompson,* 147 S.W.3d 150, 160 (Mo.App.2004).

Although we are vested with the discretion to nevertheless review Defendant's claim for "plain error" pursuant to Rule 30.20, *State v. Boydston,* 198 S.W.3d 671, 675 (Mo.App.2006), we decline to do so, as a cursory glance at Defendant's argument on this point leaves this Court unable to discern precisely what Defendant is actually arguing. Although Defendant's point relied on challenges the trial court's submission of a particular jury instruction, nowhere in Defendant's argument does he actually expound upon that claim, and never again mentions the term "jury instruction." Rather, Defendant sets out the purported contents of the "probable cause statement" in the underlying felony aggravated stalking case, and then argues that Defendant was actually arrested on a capias warrant and therefore the felony information in this case should have charged Defendant with misdemeanor—not felony—resisting arrest.

"[A party's] argument shall be limited to those errors included in the "Points Relied On." Rule 84.04(e). Further, the "probable cause statement" Defendant relies on is nowhere in the record, and he fails to explain or identify how he determined that he was actually arrested on a capias warrant in the instant case. Finally, Defendant lists a single case in support of his argument, but fails to expound upon it at all, saying only, "The Trial Court erred in letting the State proceed forward on the felony information thereby denying Appellant his right to due process in a fair trial as protected by Article I, Sections 10 and 18(a), 19, and 22 of the Missouri Constitution and the Fifth, Sixth and Fourteenth Amendments of the United States Constitution. See also, *State v. Redifer,* 215 S.W.3d 725 (Mo.App. W.D.2006)." It is not the responsibility of this Court to "seine the argument portion of a brief or transcript on appeal to ascertain the whereins and whys of claimed errors." *State v. Talley,* 258 S.W.3d 899, 914 (Mo. App.2008) (citations omitted). Defendant's third point is denied.

## V. *Exclusion of Alleged Lesser–Included Offense Instruction*

In his fourth point, Defendant argues that the trial court erred in refusing to

---

**5.** Rule 84.04 is applicable to criminal appeals through Rule 30.06(c). All references to rules are to Missouri Court Rules (2009) unless otherwise indicated.

submit to the jury an instruction related to third-degree assault of a law enforcement officer, which Defendant contends is a lesser-included offense of felony resisting arrest. We disagree.

### A. Standard of Review

■ " 'In determining whether the court erred in not giving an instruction on a lesser-included offense, there are two questions to be answered: (1) was the offence a lesser-included offense, and (2) was the evidence such that it was error not to give the instruction.' " *State v. Coker,* 210 S.W.3d 374, 380–81 (Mo.App.2006) (quoting *State v. Barnard,* 972 S.W.2d 462, 465 (Mo.App.1998)). Here, our negative answer to the first question is dispositive of this point.

### B. Analysis

■ During the jury instruction conference, Defendant proffered an instruction based upon MAI–CR3d 319.39, which he argued was a proper submission of a lesser-included offense. Specifically, Defendant requested that the jury be instructed on third-degree assault of a law enforcement officer, because the "evidence could be looked at by the jury and decided that … Defendant purposely placed Officer Ringgold in apprehension of immediate physical injury by kicking at him." The trial court agreed with the State that third-degree assault of a law enforcement officer is not a lesser-included offense of resisting arrest and denied Defendant's requested instruction.

A lesser-included offense is defined as an offense "that is 'established by proof of the same or less than all the facts required to establish the commission of the offense charged.' " *State v. Angle,*

146 S.W.3d 4, 11 (Mo.App. W.D.2004) (quoting § 556.046, RSMo 2000). In other words, "a 'lesser offense is not included in a greater [offense] unless it is impossible to commit the greater offense without first committing the lesser.' " *State v. Thompson,* 147 S.W.3d 150, 159 n. 3 (Mo.App. S.D.2004) (quoting *State v. Kirkland,* 684 S.W.2d 402, 406 (Mo.App. W.D.1984)). *State v. Kamaka,* 277 S.W.3d 807, 813 (Mo.App.2009). "[I]f the lesser offense requires the inclusion of some necessary element not so included in the greater offense, the lesser is not necessarily included in the greater." *State v. St. George,* 215 S.W.3d 341, 348 (Mo.App.2007) (citations omitted).

A comparison of the elements of both felony resisting arrest and third-degree assault of a law enforcement officer demonstrates that the latter is not a lesser-included offense of the former. In order to convict Defendant of felony resisting arrest, the State must prove: (1) that a law enforcement officer was arresting Defendant; (2) that the offense for which the officer was arresting Defendant was a felony; (3) that Defendant knew or reasonably should have known that he was being arrested; and (4) that Defendant used physical force to resist being arrested. § 575.150; *Nichols,* 200 S.W.3d at 121. On the other hand, in order to convict Defendant of third-degree assault of a law enforcement officer, the State must prove: (1) that Defendant purposely placed Ringgold in apprehension of immediate physical injury by kicking at him; (2) that Ringgold was a law enforcement officer; and (3) that Defendant knew or should have known that Ringgold was a law enforcement officer. § 565.083.1(2).[6]

---

**6.** Defendant's proffered assault instruction referenced only this particular subsection of the statute.

The trial court found that third-degree assault of a law enforcement officer contained an element not present in felony resisting arrest, and we agree. In order to sustain a conviction of third-degree assault of a law enforcement officer, the State would have to prove that Defendant purposely placed Ringgold in apprehension of immediate physical injury by kicking; felony resisting arrest requires no such proof. "A court may not instruct on an offense not specifically charged in the information or indictment, unless it is a lesser[-]included offense." *State v. Goebel,* 83 S.W.3d 639, 645 (Mo.App.2002). Thus, it would have been error for the trial court to instruct the jury on third-degree assault of a law enforcement officer. Defendant's fourth point is denied.

### Decision

The trial court's judgment is affirmed.

SCOTT, C.J., and RAHMEYER, J., concur.